# ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2013 JUN 25 PM 2: 33

CLERK
SO. DIST. OF GA.

## IN THE UNITED STATES DISTRICT COURT

### FOR THE SOUTHERN DISTRICT OF GEORGIA

### DUBLIN DIVISION

| | |
|---|---|
| SHEILA M. HOLLIMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     CV 312-049 |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security | ) |
| Administration,[1] | ) |
| | ) |
| Defendant. | ) |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Sheila M. Holliman ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

## I.     BACKGROUND

Plaintiff applied for DIB on July 10, 2008, alleging a disability onset date of January 18, 2007. Tr. ("R."), pp. 73, 145-52. The Social Security Administration denied Plaintiff's

---

[1] The Court takes judicial notice of the fact that on February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Accordingly, pursuant to Fed. R. Civ. P. 25(d)(1), the Clerk is **DIRECTED** to substitute Carolyn W. Colvin, Acting Commissioner of Social Security Administration, as Defendant in this case.

application initially, R. 79-82, and on reconsideration, R. 83-87. Plaintiff then requested a

hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a video hearing on

February 9, 2010. R. 36-70, 89-92. At the hearing, the ALJ heard testimony from Plaintiff,

who was represented by counsel, as well as from Tina Baker-Ivey, a vocational expert

("VE"). R. 36-70. On April 27, 2010, the ALJ issued an unfavorable decision. R. 15-35.

Applying the five-step sequential process required by 20 C.F.R. § 404.1520, the ALJ

found:

1. The claimant has not engaged in substantial gainful activity since January 18, 2007, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*).

2. The claimant has the following severe impairments: degenerative disc disease and mild scoliosis in the lumbar spine; status post microdiscectomy; status post anterior cervical discectomy and fusion; left shoulder impingement; left trigger thumb; obesity; major depressive disorder, recurrent, without psychosis; and diabetes mellitus with neuropathy (20 C.F.R. § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

4. The claimant has the residual functional capacity ("RFC") to perform light work[2] as defined in 20 C.F.R. § 404.1567(b) except claimant can

---

[2]"Light work" is defined as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

bend only occasionally, can finger and handle with the dominant hand frequently but not constantly, and can reach overhead with both arms frequently but not constantly. Additionally, claimant has a moderate (limited but generally satisfactory) limitation on the ability to interact appropriately with the public, coworkers, and supervisors (i.e., can handle routine interactions, but should avoid intense interactions). In light of her RFC, the claimant is capable of performing her past relevant work as a garment inspector, a cafeteria attendant, and a sitter (20 C.F.R. § 404.1565).

R. 20-28.

Because the ALJ determined that Plaintiff could perform her past relevant work, the sequential evaluation process stopped, and the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from January 18, 2007, through April 27, 2010, the date of the decision, 20 C.F.R. § 416.920(f). R. 29. When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-4, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal and arguing that the decision is not supported by substantial evidence because: (1) the ALJ failed to apply the proper legal standards in rejecting the opinion of Plaintiff's treating psychiatrist; (2) the ALJ failed to properly evaluate and assign weight to opinion evidence in the record and improperly substituted his opinion for that of the medical experts; (3) the ALJ failed to properly assess Plaintiff's RFC; and (4) the ALJ presented to the VE a hypothetical that failed to include all of Plaintiff's medically determinable impairments and resulting limitations. (See doc. no. 11 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the decision to deny benefits was supported by substantial evidence and should be affirmed. (See doc. no. 12 (hereinafter "Comm'r's Br.").)

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter

v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of Commissioner's legal conclusions are not subject to substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. The ALJ Properly Evaluated the Opinion of Plaintiff's Treating Psychiatrist

Plaintiff's first argument is that the ALJ erred in assigning little weight to the medical findings of Louis Jacobs, M.D., Plaintiff's treating psychiatrist, who evaluated Plaintiff's mental functioning. (Pl.'s Br., pp. 13-16.) More specifically, Plaintiff argues that the ALJ failed to show "good cause" for assigning little weight to Dr. Jacobs' opinion as is required by the applicable standard. (Id. at 15.) The Commissioner argues that the ALJ did, in fact, articulate good cause for rejecting Dr. Jacobs' opinion based on his finding that the opinion was unsupported and inconsistent with both Dr. Jacobs' own treatment notes and the other evidence in the record. (Comm'r's Br., pp. 11-13.) The Commissioner has the better argument.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner

5

show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (ruling that ALJ must accord substantial or considerable weight to opinion of treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (per curiam) (same). The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical record. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).

Furthermore, under Social Security Ruling ("SSR") 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p; see also 20 C.F.R. § 404.1527(e).

Here, the opinion that is the subject of Plaintiff's argument is the "Mental Impairments Questionnaire" concerning Plaintiff's mental functioning that Dr. Jacobs completed on February 23, 2010. R. 570-77. In that questionnaire, Dr. Jacobs evaluated Plaintiff pursuant to a number of different factors relating to her mental condition and aptitude; of particular relevance to the instant appeal is his analysis of her functional

limitations pursuant to the so-called "paragraph B" criteria, which are explained in more detail below. R. 575. As to those criteria, Dr. Jacobs opined that Plaintiff had "none-mild" restrictions as to activities of daily living and repeated episodes of decompensation within a twelve-month period, "moderate" difficulties in maintaining social functioning, and "moderate" deficiencies of concentration, persistence, or pace. Id. Dr. Jacobs also indicated that Plaintiff had a medically documented history of a chronic mental affective disorder of at least two years' duration that has caused more than a minimal limitation of Plaintiff's ability to do any basic work activity. R. 576.

Notably, 20 C.F.R. § 404.1520a sets forth a "special technique" to be followed in the analysis of mental impairments. In employing that technique, the ALJ must first evaluate a claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b). Next, the ALJ must rate the degree of functional limitation resulting from the mental impairment by considering four functional categories and rating the degree of functional limitation in each category.[3] Id. § 404.1520a(c). Those categories include activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.[4] Id. § 404.1520a(c)(3). In rating the first three functional categories, an ALJ classifies the degree of limitation as "none," "mild," "moderate," "marked," or "extreme." In rating the decompensation category, the ALJ classifies the limitation as

---

[3]These four functional categories are known as the "paragraph B" criteria. R. 17.

[4]"*Episodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence or pace." 20 C.F.R. Part 404, Subpart P, App. 1, §12.00(C)(4).

"none," "one or two," "three," and "four or more." Id. § 404.1520a(c)(4). "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." Id.

After rating the degree of functional limitation stemming from a mental impairment, the ALJ must then determine whether that impairment is severe. Id. § 404.1520a(d). If the ALJ finds the degree of limitation in the first three categories to be "none" or "mild" and the degree of limitation in the fourth category to be "none," the ALJ "will generally conclude that [the] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation on [the] ability to do basic work activities." Id. § 404.1520a(d)(1). Only if the ALJ finds that the mental impairment is severe will he then be required to determine whether the impairment meets or is equivalent in severity to a listed mental disorder. Id. § 404.1520a(d)(2). With these basic principles in mind, the Court turns to Plaintiff's argument concerning the ALJ's treatment of Dr. Jacobs' opinion.

Initially, it is worth noting that the ALJ acknowledged at step two of the sequential process that Plaintiff's major depressive disorder was a severe impairment. R. 20-21. However, he subsequently found at step three that, under Listing 12.04 for mental affective disorders,[5] her major depressive disorder did not meet the requisite paragraph B criteria for

---

[5]Listing 12.04 defines an affective disorder as "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04. In order to satisfy the requirements of the Listing, a claimant must show medically documented persistence – either continuous or intermittent – of depressive syndrome, resulting in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of extended decompensation. Id.

that Listing. R. 22–23. Specifically, and with repeated reference to her hearing testimony, the ALJ found that Plaintiff in fact had only mild restrictions in daily living, moderate difficulties with social functioning, mild difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation that were of an extended duration. R. 23-24. In making his findings, the ALJ acknowledged Dr. Jacobs' evaluation, and he noted in particular Plaintiff's comment to Dr. Jacobs that she was "socially isolated" and Dr. Jacobs' conclusion that Plaintiff "experienced moderate deficiencies in maintaining social function." R. 22-23. However, the ALJ then stated that Dr. Jacobs' ratings with respect to the paragraph B criteria were not consistent with his "more specific, but equally conclusory" ratings concerning Plaintiff's mental abilities earlier in the same evaluation. R. 23, 573-74. Moreover, as to the functional limitation of "concentration, persistence, or pace" in particular, the ALJ noted that Dr. Jacobs' finding that Plaintiff's limitations were anything more than minimal was conclusory and unsupported. R. 23. In making his finding that Plaintiff in fact had only "mild" difficulties with regard to that functional limitation, the ALJ pointed to Plaintiff's hearing testimony that her medications have helped "a lot" and that she is able to engage in activities that required a high degree of concentration, such as cooking and driving, in addition to the internal inconsistency of Dr. Jacobs' evaluation. R. 23, 38-70.

Next, the ALJ noted Dr. Jacobs' consistent findings that Plaintiff had a Global Assessment of Functioning ("GAF") score of 51, while her best GAF of the past year was consistently 60. R. 23, 27, 528-38. The ALJ then explained that, despite Dr. Jacobs' determination of those scores, Dr. Jacobs' own mental status examinations do not

9

consistently show any disabling mental limitations and, moreover, Plaintiff reported in her hearing testimony that her medication was helping with her depression a lot.[6] R. 23, 27, 63-64, 528-38. Moreover, the ALJ noted that, although Dr. Jacobs indicated in his February 23, 2010 evaluation that Plaintiff had a medically documented history of a mental disorder of at least two years' duration, R. 576, Plaintiff did not begin treatment for depression until June of 2009, R. 536-38, less than a year prior to the February 23, 2010 evaluation. R. 23.

Finally, the ALJ noted that Dr. Jacobs' "conclusory" opinion that Plaintiff cannot complete a normal workday or workweek – or perform at a consistent pace without an unreasonable number and length of rest periods – is not supported by the severity of Plaintiff's symptoms as described during her hearing testimony or by Dr. Jacobs' longitudinal treatment notes. R. 27, 38-70, 573. In particular, the ALJ cited Dr. Jacobs' notes from his 2009 evaluations that, *inter alia*, Plaintiff "is mildly depressed, but easily directed," that she "is very pleasant, alert, oriented, logical, relevant and coherent," that she "is smiling and able to laugh." R. 27, 528-38.

For all of the above reasons, the ALJ explained that he assigned only "little weight to [Dr. Jacobs'] conclusory medical findings included in the [February 23, 2010]

---

[6]The Court additionally notes that, however accurate or inaccurate Plaintiff's GAF scores as determined by Dr. Jacobs, a "GAF score does not itself necessarily reveal a particular type of limitation and is not an assessment of a claimant's ability to work." Ward v. Astrue, No. 3:00-CV-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008) (citation omitted) ("[A]n opinion concerning GAF, even if required to be accepted as valid, [does] not translate into a specific finding in regard to functional limitations."); see also Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (*per curiam*) (noting that "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs'") (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746-01, 50764).

questionnaire" and, in particular, to Dr. Jacobs' functional capacity evaluation in the same. In short, despite Plaintiff's unsupported argument to the contrary (Pl.'s Br., p. 15), the ALJ throughly articulated a host of reasons demonstrating good cause as to why he accorded little weight to Dr. Jacobs' opinion. See Schnorr, 816 F.2d at 581; Sryock, 764 F.2d at 835.

**B.    The ALJ Properly Addressed Opinion Evidence of Non-Treating Physicians**

Plaintiff's next argument in her brief is that the ALJ failed to properly evaluate and/or assign weight to the consultative opinions of Kush Kumar, M.D., and Charles Jackson, M.D. (Pl.'s Br., pp. 16-17.) Additionally, although she did not raise the argument in her original brief, Plaintiff argues in her reply brief that the ALJ also failed to "mention and weigh the opinion of" Russell Wallace, M.D., a State Agency non-examining medical consultant. (Doc. no. 13, p. 5.) The Commissioner contends that the ALJ clearly considered Dr. Kumar's opinion in arriving at his decision and that he properly accorded little weight to Dr. Jackson's opinion. (Comm'r's Br., pp. 7-9.) The Commissioner has not submitted a response to Plaintiff's argument concerning Dr. Wallace, which, as noted, was presented for the first time in her brief in response to the Commissioner's brief.

The Court concludes that the Commissioner has the better argument concerning Dr. Kumar and Dr. Jackson and that, additionally, Plaintiff's argument concerning Dr. Wallace is unavailing. While it is true that, in the Eleventh Circuit, a treating physician's opinion must generally be given substantial weight, Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*), the same is not true of a consultative physician. As a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record. Crawford, 363 F.3d at 1160-61. In particular, the

Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 404.1527(c)(1)-(2), (5).[7]

Moreover, the ALJ has a duty to develop the facts of the case fully and fairly. Todd v. Heckler, 736 F.2d 641, 642 (11th Cir. 1984) (citing Ford v. Sec'y of Health and Human Serv., 659 F.2d 66, 69 (5th Cir. 1981)). As part of that duty, the ALJ must "make clear the weight accorded to the various testimony considered." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). Specifically, the ALJ is required to "state specifically the weight accorded to each item of evidence and why he reached that decision" since, "in the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Id.

However, the Eleventh Circuit has clarified "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the Court] to conclude that the ALJ considered her medical condition as a whole.'" Dyer v. Barnhart, 395 F.3d

---

[7]20 C.F.R. § 404.1527(c) provides a list of factors that are considered in evaluating opinion evidence when the opinion is not that of a treating physician, or when a treating physician's opinion is not given controlling weight, including the length of the relationship, the frequency of examination, and the nature and extent of the treatment relationship. 20 C.F.R. § 404.1527(c)(2) specifically notes that, generally, more weight is given to opinions from treating sources as compared to reports of consultative examinations, since treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence . . . ."

1206, 1211 (11th Cir. 2005) (quoting <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995))

(punctuation omitted); <u>see also</u> <u>McCray v. Massanari</u>, 175 F. Supp. 2d 1329, 1336 (M.D.

Ala. 2001) ("[A]n ALJ is not required to discuss every piece of evidence submitted."

(quoting <u>Black v. Apfel</u>, 143 F.3d 383, 386 (8th Cir. 1998))).

### 1. Dr. Kumar and Dr. Jackson

Here, although Plaintiff asserts that the ALJ "failed to even discuss" Dr. Kumar's

report (Pl.'s Br., p. 16) – which Dr. Kumar provided in a consultative capacity on a single

occasion on October 20, 2008, R. 451-56 – it is clear from the ALJ's opinion that such is

not the case. As correctly pointed out by the Commissioner, the ALJ specifically discussed

Dr. Kumar's report and findings on a number of occasions in his opinion. (Comm'r's Br.,

p. 7.) In particular, the ALJ noted Dr. Kumar's report that Plaintiff had trigger thumb, R.

21, and he additionally referred to a number of Dr. Kumar's diagnoses concerning Plaintiff's

back, R. 25-26. While it is true that the ALJ did not explicitly assign any particular amount

of weight to Dr. Kumar's opinion, the fact remains that Dr. Kumar, as a consultative

physician, was not entitled to great weight. <u>Crawford</u>, 363 F.3d at 1160-61. As to

Plaintiff's related argument that the ALJ was simply required to point out the amount of

weight he accorded to Dr. Kumar's opinion regardless of the amount of such weight, the

Court finds that the ALJ's decision as a whole remains supported by substantial evidence

such that his failure to explicitly assign weight to Dr. Kumar's opinion does not constitute

a "broad rejection" indicating that the ALJ failed to consider Plaintiff's medical condition

as a whole. <u>Dyer</u>, 395 F.3d at 1211.

Even assuming *arguendo* that the ALJ is absolutely required to specify the weight

he accorded to Dr. Kumar's opinion, the Court finds that his failure to do so here constitutes

harmless error, in that there is no indication Dr. Kumar's opinion would have changed the ALJ's decision even if it were accorded great weight. See Wright v. Barnhart, 153 F. App'x 678, 684 (11th Cir. 2005) (*per curiam*) (noting that "when an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand"). Outside of her broad statement that Dr. Kumar's report "contains positive objective findings consistent with [Plaintiff's] subjective allegations of pain," Plaintiff fails to explain what information in that report in particular supports her claim or what effect she believes that information might have had on the ALJ's ultimate decision. (Pl.'s Br., p. 16.) Moroever, Dr. Kumar's report appears to largely support the ALJ's finding of no disability. His report states that, although Plaintiff had some degree of pain associated with movement, she was able to lift both legs 90 degrees, had a normal gait, was able to get on and off the examination table normally, had no pain in moving her left thumb, and had normal motor strength and grip strength in her extremities. R. 454-56. None of these findings interfere with the ALJ's finding that Plaintiff was capable of engaging in "light work," as defined supra. R. 28. In short, the Court finds that the ALJ's failure to specify the weight he accorded to Dr. Kumar's opinion provides no basis for remand.

Equally unavailing is Plaintiff's argument that the ALJ erred in assigning little weight to Dr. Jackson's consultative evaluation from March of 2010. (Pl.'s Br., p. 17.) Although Plaintiff contends that the ALJ, by failing to cite to any medical evidence of record, improperly substituted his own opinion for that of Dr. Jackson because he simply did not "believe [Dr. Jackson's] opinion [to be] a correct assessment of [Plaintiff's]

functioning (id.), the ALJ's opinion indicates otherwise. In actuality, the ALJ specifically noted that Dr. Jackson's findings concerning Plaintiff's functional limitations "do not demonstrate that [Plaintiff's] impairments impede her functions to the degree stated by Dr. Jackson," and he additionally found that Plaintiff directly and repeatedly contradicted those findings in her hearing testimony. R. 27. For instance, although Dr. Jackson stated that Plaintiff could never look down, turn her head left or right, or look up, R. 585, Plaintiff testified that she frequently drove her car and placed groceries on shelves above her head, R. 61-62. As noted above, the opinion of a one-time examiner like Dr. Jackson is not entitled to great weight and may be discredited by other evidence in the record. Crawford., 363 F.3d at 1160-61. Here, the ALJ clearly explained that he was according little weight to Dr. Jackson's opinion due to a lack of objective supporting evidence, and because that opinion stood in direct contradiction to Plaintiff's admitted functional capacity. R. 27. Thus, the ALJ's decision to accord little weight to that opinion was not error.

### 2.     Dr. Wallace

Finally, the Court finds unpersuasive Plaintiff's argument that the ALJ erred in failing to mention or weigh the opinion of Dr. Wallace, who provided a consultative evaluation of Plaintiff in August of 2007. (Doc. no. 11, pp. 5, 12, 14; doc. no. 13, p. 2.) Again, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the Court] to conclude that the ALJ considered her medical condition as a whole.'" Dyer, 395 F.3d at 1211. Here, although Plaintiff generally argues that the ALJ should have mentioned and weighed Dr. Wallace's opinion, she does not explain how his doing so might have affected his ultimate decision in any way, especially in light of the fact

15

that the opinion in question paints a particularly robust picture of Plaintiff's physical capabilities. (Doc. no. 13, p. 2.) In other words, the Court finds no reason to conclude that the incorporation of Dr. Wallace's opinion into the ALJ's decision would have done anything to affect that decision, and its omission does not indicate that the ALJ failed to consider Plaintiff's medical condition as a whole. Thus, the ALJ's failure to mention or weigh Dr. Wallace's opinion also does not constitute error. See Dyer, 395 F.3d at 1211.

### C. The ALJ's RFC Finding Is Supported by Substantial Evidence

Plaintiff next argues that the ALJ improperly evaluated her RFC, which led to an erroneous determination that she was capable of performing her past relevant work as a garment inspector, a cafeteria attendant, and a sitter. (See Pl.'s Br., p. 18.) Plaintiff's first allegation of error as to the ALJ's RFC assessment is that it was flawed because "Dr. Jacobs, Dr. Jackson, and Dr. Kumar all opined greater limitations than the ALJ's assessed RFC." Id. However, as discussed above, the ALJ properly discredited and/or assigned little weight to the opinions of Dr. Jacobs and Dr. Jackson, and the ALJ's failure to explicitly assign weight to Dr. Kumar's opinion provides no basis for reversal or remand,[8] see supra Parts III.A, B; therefore, this allegation of error concerning the RFC is without merit. In other words, any discrepancies between the RFC and the findings of those physicians were properly explained by the ALJ in accordance with the appropriate regulations.

In assessing Plaintiff's RFC, the ALJ thoroughly considered Plaintiff's impairments and adhered to the requisite three-part standard established by the Eleventh Circuit for

---

[8]As to Dr. Kumar's evaluation, the only one of the three mentioned by Plaintiff that the ALJ did not outright discredit to some extent, Plaintiff fails to provide any explanation as to *how* Dr. Kumar's opinion belies the ALJ's assessed RFC, and she instead simply asserts in conclusory fashion that it does so. (Pl.'s Br., p. 18.)

evaluating a claimant's complaints of pain and other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980) (*per curiam*).[9] As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole.

Dyer, 395 F.3d at 1210-11.

Here, as noted, the ALJ methodically addressed each of Plaintiff's objectively

---

[9]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

determinable medical conditions, as well as her allegations concerning symptoms related to those conditions, and he arrived at an RFC that he explained was "well supported by [Plaintiff's] description of her activities of daily living which, significantly, include many activities she denied performing in written statements." R. 25. Specifically, the ALJ noted Plaintiff's prior allegations in medical evaluations that she is unable to lift objects, that she has difficulty sleeping, that her back bothers her if she stands up for too long and hurts if she bends over, that she "cannot hardly grip anything," that wearing a bra and driving a car make her shoulders hurt, that she has burning pains and numbness in her right finger and arm, that she hardly does anything between waking up and going to bed, and that her children assist her with cooking cleaning, bathing, and shopping. R. 24, 180, 219, 284-90, 306.

However, the ALJ then went on to note Plaintiff's contradictory testimony during her hearing that she can use her left hand to button clothing, sign her name, and pick up objects; that she can cook herself breakfast, cook otherwise approximately twice a week, and reheat leftovers; that she can vacuum, dust, wash dishes, do laundry, bathe, put on shoes and socks, and drive "a little;" and that she can pick up ten pound objects and put away groceries in cabinets above her head. R. 25, 38-70. The ALJ then went on to document each of Plaintiff's medical diagnoses and to compare her alleged symptoms as to those diagnoses with her hearing testimony concerning what she was in reality capable of accomplishing.[10] R. 25-28. In other words, the ALJ went to great lengths to carefully address Plaintiff's

---

[10]Given the considerable detail with which the ALJ addressed Plaintiff's medical conditions, her related symptoms, and her testimony concerning the same – and the relatively simple resolution of the issue – the Court need not further recount his analysis here. See R. 24-28.

various medical conditions and her symptoms related to those conditions, such that he undoubtedly provided "explicit and adequate" reasons for discrediting Plaintiff's subjective allegations of her disabling symptoms where those allegations contradicted her hearing testimony. Foote, 67 F.3d at 1561-62.

Finally, Plaintiff takes issue with the ALJ's reliance on the opinion of Ramona Minnis, M.D., a state agency physician who evaluated Plaintiff's medical records in April of 2009, in assessing Plaintiff's RFC. (Pl.'s Br., p. 18.) In particular, Plaintiff argues that the ALJ erred in so relying on Dr. Minnis' opinion because that opinion "is not substantial evidence standing alone," given that Dr. Minnis is a non-examining physician. (Id.) That argument, however, is unavailing, as it is not error for an ALJ to "[credit] the reports of non-examining, non-treating physicians," so long as the opinion of the treating physician is accorded proper weight. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). Here, there is no indication that Plaintiff's treating physician was not accorded proper weight, given that the Court has already addressed the ALJ's decision to accord little weight to the opinion of Dr. Jacobs, Plaintiff's treating psychiatrist, and found that decision to be proper. Moreover, the ALJ clearly articulated his reasons for according great weight to the opinion of Dr. Minnis, noting that her opinion "takes into account all of the objective medical findings" and "most closely approximates the residual functional capacity demonstrated by [Plaintiff's] stated activities of daily living" in her hearing testimony. R. 28.

In sum, the ALJ's assessment of Plaintiff's RFC – which took into account the objective medical findings regarding Plaintiff's impairments, the relevant and non-discredited medical interpretations of those findings, and Plaintiff's statements concerning her activities of daily living, R. 24-28 – is supported by substantial evidence. Barron, 924

19

F.2d at 230.

### D. The ALJ Properly Relied Upon the VE's Testimony

Plaintiff's final contention of error is that the ALJ's reliance on the testimony provided by the VE at the hearing was improper because the hypothetical question presented by the ALJ did not include all of Plaintiff's limitations. Specifically, Plaintiff contends that the ALJ's hypothetical was improper because it was not consistent with the medical evidence of record and did not include certain limitations referred to by Plaintiff's counsel during the hearing. (Pl.'s Br., p. 19.) Plaintiff argues that, had the hypothetical included those limitations, the ALJ's decision "would be different." (Id.) The Commissioner argues that substantial evidence supports the ALJ's determination of Plaintiff's RFC, which therefore properly formed the basis for his hypothetical question to the VE. (Comm'r's Br., p. 13.)

The record reflects that the ALJ addressed two separate hypothetical questions to the VE, the first of which is as follows:

> In the first hypothetical the exertional ability is light, bending can be occasional, with the dominant hand fingering and grasping or handling can be frequent but not constant . . . . No restriction on the other non-dominant. Overhead reaching can be done frequently, that's both, both sides, right and left, frequent overhead, again not constant. Assume a moderate limitation on interaction with others and moderate means limited but generally satisfactory, and to explain that further the individual should avoid situations that require intense interaction with others. . . . There's a capability to interact but this should not be done, you know, all day long, every minute of every day on a very intense interpersonal level. . . . As far as routine interaction there's capability to do routine interaction. . . . Would the individual that I have profiled in this hypothetical be capable of performing any of [Plaintiff's] previous work?

R. 65-66. The VE testified that such an individual would be capable of performing Plaintiff's past work as a garment inspector, a cafeteria assistant, and a sitter, as those jobs

20

are generally performed in the national economy. R. 66.

The ALJ then posed a second hypothetical question to the VE, specifying the same limitations as the first hypothetical but noting that the "exertional ability is sedentary instead of light." R. 67. The VE testified that such an individual would not be able to perform Plaintiff's past relevant work but would be able to work as a surveillance system monitor or an order clerk. Id. Plaintiff's attorney then asked the VE whether any of the above-described jobs would allow for a "sit/stand option," and the VE responded that only the position of surveillance system monitor would allow such an option. R. 68. Plaintiff's attorney also asked the VE whether a hypothetical individual's need to take unplanned breaks would affect that individual's performance of the above-described jobs, and the VE responded that such a person "would not be able to stay on schedule and complete job assignments." Id.

Of course, the underlying assumptions of hypothetical questions must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987) (*per curiam*); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985) (*per curiam*); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."); Coleman v. Barnhart, 264 F. Supp.2d 1007, 1011 (S.D. Ala. 2003) (failing to comprehensively describe a claimant's impairments and limitations is grounds for remanding case for further proceedings).

Here, Plaintiff's entire argument concerning the ALJ's supposedly improper hypothetical to the VE appears to be premised on her markedly broad contention that the hypothetical was not "consistent with the medical evidence of record" and did not include the limitations set forth by Plaintiff's counsel during her examination of the VE. (Pl.'s Br., p. 19.) However, as explained in detail supra Part III.C, the ALJ's RFC assessment – which, again, formed the basis for the VE's testimony that Plaintiff was capable of performing her past relevant work – is supported by substantial evidence. That being the case, Plaintiff's argument that the hypothetical posed to the VE was somehow inconsistent with the medical evidence is unavailing given that, as explained supra Parts III.A, B, and C, the ALJ did not give great weight to the opinions of Dr. Jacobs and Dr. Jackson and assigned great weight to opinion of Dr. Minnis. In fact, the ALJ specified in his opinion that the additional limitations set forth by Plaintiff's attorney at the hearing "are not supported by the medical evidence of record," and he additionally noted that "such limitations are contradicted by the opinion of Dr. Minnis and [Plaintiff's] own discussion of her activities of daily living." R. 28.

In sum, the ALJ's hypothetical question adequately accounted for Plaintiff's functional limitations, meaning that the ALJ properly relied upon the VE's testimony in response to that question. Accordingly, the ALJ's determination that Plaintiff could return to her past relevant work is supported by substantial evidence. McSwain, 814 F.2d at 619-20.

## IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that

22

the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and

that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 25th day of June, 2013, at Augusta,

Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE